## W. L. BOWLING v. HAMBLEN COUNTY MOTOR CO., et al.

Eastern Section. April 16, 1932.

Petition for Certiorari denied by Supreme Court, October 15, 1932.

H. O. Fortner, of Knoxville, for appellant.

J. Frank Park, of Jefferson City, Taylor, Bell & McCandless and McMahan & Pierce, all of Morristown, for appellee.

PORTRUM, J. In the fall of 1930, the complainant, W. L. Bowling, operated a filling station in Jefferson County, and desiring to open a filling station in Grainger County, he entered into a partnership with a woman by the name of Lucile McBee Scaggs, but the woman had no ready funds to put in the business, however, she owned a Chevrolet automobile. It was agreed that Bowling would allow her $250 on this automobile as her portion of the capital. A small store and lunch stand was to be operated in connection with this filling station. A building was secured and the business opened under the name of the "New Haven Filling Station." The complainant testified it was necessary to own and operate an automobile in connection with this business, and he operated one in connection with his filling station in Jefferson County; so he and the woman went to Morristown, in Hamblen County, and purchased a Ford automobile from the Hamblen County Motor Company, trading in the Chevrolet for the down payment, and Bowling executed his notes for the deferred payments. The deferred payments were financed by the Commercial Credit Company, of Knoxville, which had an arrangement with the Motor Company to carry its undue paper under what is commonly known as the finance plan, and as a part of this plan the purchaser was required to pay to the seller, in addition to the purchase price, a premium for fire and theft insurance, which the seller and the Credit Company secured for him. Bowling executed his notes for the sum of $363.12, and later the insurance policy was sent to him. The coverage of this policy was $500.

In making application for the policy the car was described as a Ford roadster, Model No. 3922162, when as a matter of fact it should have been described as a sport coupe, Model No. 3819612; the policy was issued upon the application and did not describe the car purchased. The Motor Company insists this error is attributable to the Finance Company, while this company insists the error is attributable to the Motor Company.

The car was purchased on October 13th, and on December 1st, the purchaser notified the Motor Company that the car had been stolen. In due time the insurance company was notified and sent an adjuster, who discovered that the policy did not describe or cover the car lost. And also insisted the car was not stolen, as defined in the policy. The insurance company declined to adjust the loss.

The complainant then brought this suit, suing first the insurance company upon its policy of insurance (but he did not seek a reforma-

tion), and second, the Motor Company and the Finance Company, seeking a judgment against these companies in the event he could not recover on the policy of insurance because of their joint mistakes, or against the company committing the mistake. The Insurance Company answered denying liability; the Motor Company answered and disclaimed any mistake or negligence on its part; and the Finance Company answered denying any mistake or negligence on its part, but accusing the Motor Company of the mistake, as the Motor Company had accused it of the mistake, and it filed a cross-bill against the complainant, Bowling, and the Motor Company, seeking a re-covery upon the note executed by Bowling and endorsed by the Motor Company. The company and Bowling answered the cross-bill, and the proof was taken.

The Chancellor found as a fact that the car was stolen, but that the complainant was not entitled to recover upon the policy of insurance because it did not describe the stolen car. He then found as a fact that the seller and the Finance Company undertook to pro-cure a policy of theft insurance for the purchaser, and that the Finance Company was negligent in making the application for the insurance in that it described another car, and failed to correctly describe the car intended to be the insured. He then gave a judgment against the Finance Company and in favor of the complainant for the amount recoverable under this policy and ordered this judgment paid by the cancellation of the notes held by the Finance Company against the maker and the endorser, and after crediting this amount gave a judgment in favor of the complainant for the balance, or $137.74, and costs. The Insurance Company did not pray and perfect an appeal, but the other parties did.

The first assignment of the Commercial Credit Company is that the Court erred in finding that the car was stolen; and the Insurance Company in its reply brief insists that it is entitled to rely upon this defense in this court as an additional reason why the decree of the lower court should be affirmed in its favor.

The appellee, Bowling, insists that the appeal prayed by the Com-mercial Credit Company was a special appeal, and did not specify this error as the one appealed from, and for this reason the Credit Company cannot raise this issue in this court. We are referred to a decree which bears out this statement, but following this is an order vacating the decree, and then followed another decree, and while the prayer in this is a special prayer, it specified this and other issues as erroneous. Therefore, the Credit Company has the right to raise the issue here. The first proposition raised is that a partnership car placed in the possession of a partner is not the subject of larceny by the partner who is in possession of the car. The second is, that if

it were larceny, then the theft by one partner of partnership property in his possession is expressly excepted from the provision of the policy, and the loss was expressly excluded. In the anwer to the cross-bill Bowling avers:

"Later, the filling station in Grainger County was located and she (Mrs. Scaggs) and your respondent leased the same. Mrs. Scaggs had no money and it was understood and agreed that your respondent would stock up and equip the filling station over there for the Chevrolet car that she was then in possession of. It was agreed that it would be necessary to have an automobile to accommodate that filling station as it was a considerable distance away from any town and for which it was necessary to buy supplies, etc. So that having purchased her interest in the Chevrolet he and she went to Morristown and traded in this Chevrolet car on the Ford coupe in question to which the title was made to him and of which he was the owner but which she was to use as understood between them. It was fully known to the Hamblen County Motor Company that the car was being used by her from the filling station in Grainger County, and she drove same to the Motor Company where other equipment was placed on same and where she bought gas."

Bowling testified that he and Mrs. Scaggs were partners; he was asked: "Did you put the money up?" He answered, "She swapped me her car and I was to allow her $250 for the Chevrolet automobile." And again, "Then you were partners in that business over there and operated it as such?" He answered, "Yes, sir."

He also testified that Mrs. Scaggs selected the Ford car, and that he told the salesman he would take the car which she selected. She was in charge of the filling station and used this car from October until December, when the complainant undertook to dissolve the partnership. He gives this version of the dissolution and the theft of the car:

"We went into business together over there and it was to be used to do the hauling. I had one at the lake I used to haul, etc., in connection with my business there. It was used in connection with the business, once in a while making a trip to Knoxville, but generally taking groceries from the Taylor Grocery Company. I didn't have any garage, but I kept it on the lot there at night. I had a cover I put over it in bad weather.

"Somebody told me she was running a bad house over there and I went over there and took C. R. Rogers with me. I asked her what she meant by that and I told her, 'you were to run this place straight and keep a clean place and the neighbors have been talking.' It was the agreement if she didn't come square

with me that I was to pay her part and she was to get out and I said, 'I am taking charge of this and leave my brother-in-law in charge of this. I will get Alonzo Finchum. And I told Rogers to drive the Nash car back and I would drive the Ford car. The keys to the car were hanging up by the door and she reached up and got the keys and ran out of the door with them and I followed her and she got in the car, and when I tried to make her give me the keys she put them down in her bosom and I came on back and took Alonzo over there to run the place and the car was gone and about everything in the stand was gone, and I came over here and notified the Hamblen County Motor Company about it."

When he returned with Alonzo the following morning he found the woman and the car gone; he then went to the magistrate for the purpose of taking out a replevy warrant, and later to the Hamblen Motor Company to notify them of the theft. The insurance policy has this provision in reference to theft:

"Theft, robbery and pillage, except by any person or persons in the assured's household or in the assured's service or employment, whether the theft, robbery or pillage occurs during the hours of said service or employment or not; and excepting loss suffered by the assured from the voluntary parting with the title and/or possession, whether or not induced so to do by any fraudulent scheme, trick, device, or false pretense, or otherwise, and excepting in any case other than the theft of the entire automobile described herein, the theft, robbery or pillage of tools or repair equipment, motormeters, extra tires, and/or tubes and/or rims, and/or wheels, and/or extra or ornamental fittings.

"This policy does not insure against the wrongful conversion, embezzlement or secretion of the mortgagor, vendee, lessee, or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal."

To constitute larceny "the taking must be without the least color of right or excuse for the act, and with the intent to deprive the owner, not temporarily, but permanently, of his property." Fields v. State, 6 Cold., 524. Certainly it has not been established by the evidence in this case that the woman who took the automobile "not under a claim or color of right, and with an intention to deprive the true owner of its possession." She was in possession of the car and there was no trespass. The complainant Bowling admits that it was his duty to pay her for her interest in the business. He had not paid her and had no right to take possession of the business and eject her forcibly. And he cannot wind up this partnership by calling the act

of the woman a theft of the car and then call upon the Insurance Company to remunerate him for his interest in the business. If this were possible he may have gained an advantage by a theft of the car by his partner, and a theft or larceny contemplates a loss. We do not think this woman under the facts is guilty of larceny, and in any event the company is not liable under the policy in view of the express exception above quoted.

The purpose of the exception is well stated in the case of Rydstron v. Queen Insurance Co. of America (Md.), 14 A. L. R., 212:

"The object and purpose of an exception like the one we are here dealing with in this policy was to guard the company against liability for such theft as we have in this case, and to prevent fraud and collusion by and between the assured and persons in a household or in the assured's service or employ."

Since the assured could not recover under the policy, if this car had been correctly described in the policy, then the error in the description, whoever committed it, caused him no injury or loss. He cannot recover for the negligence of a party when the negligence is not the proximate cause of the injury, or when there was no injury growing out of the negligence. The Chancellor erred in pronouncing a judgment in the assured's favor and against the Commercial Credit Company. It follows that he should not have decreed the cancellation of the notes held by the Commercial Credit Company.

Under its cross-bill, and the assignment of error based upon its dismissal, the Commercial Credit Company is entitled to a judgment upon its notes against the maker and the endorser. The Chancellor erred in not rendering such a judgment. A judgment will be entered here in favor of the Retail Credit Company, and against the maker, W. L. Bowling, and the endorser, the Hamblen County Motor Company, for the face of the notes, less credits, or the sum of $279.74, with interest from the date of the decree in the lower court, namely September 22, 1931. The original bill is dismissed with costs. The cross-bill of the Credit Company is sustained with costs against the maker and endorser made defendants, and the costs of the appeal will be paid by the complainant, Bowling, and the sureties on his appeal bond.

Snodgrass and Thompson, JJ., concur.